### EUREKA CO. et al. v. HENNEY MOTOR CO.

#### No. 861.

District Court, D. Delaware.
April 29, 1936.

See, also, 4 F.Supp. 564.

H. A. Toulmin, Jr. (of Toulmin & Toulmin), of Dayton, Ohio, C. E. Sheldon, of Sterling, Ill., and C. C. Keedy, of Wilmington, Del., for plaintiffs.

Russell Wiles (of Dyrenforth, Lee, Chritton & Wiles), of Chicago, Ill., Charles H. Green, of Freeport, Ill., and William G. Mahaffy, of Wilmington, Del., for defendant.

NIELDS, District Judge.

The bill charges defendant with acts of unfair competition in advertising falsely concerning the right of the Eureka Company, plaintiff, to sell side-loading hearses and more particularly to sell separate sets of vehicle parts or "casket tables" under Heise U. S. patent No. 1,721,391. For relief, plaintiffs seek an injunction restraining defendant from making false representations and misstatements respecting plaintiffs' right to sell side-loading hearses under said patent; from representing that plaintiffs are infringers of said patent, and that customers buying from plaintiffs will be infringers; from interfering with plaintiffs in making, assembling, using, and selling the patented apparatus; and an accounting. The answer of defendant justifies the alleged acts of unfair competition on two grounds: (1) That the statements published and made by defendant are true; and (2) that such statements were made in good faith.

There was proof that defendant published advertisements and caused statements to be made, to the effect, that the Eureka Company does not have a license under the Heise patent; that the Eureka Company and its customers are infringers of the Heise patent; that the Eureka Company and its customers are "bootleggers," "commercial counterfeiters," "imitators," "infringers," and "copiers" of the hearses of defendant.

The three plaintiffs and the defendant are hearse manufacturers. Defendant is the largest hearse builder in the country. The Eureka Company has been manufacturing side-loading hearse equipment under its own patented developments since 1926. As hearse manufacturers, the parties became interested in the automobile hearse covered by patent granted July 16, 1929, to William H. Heise, assignor to Big Rock Ranch Company. In general terms the patentee says of his apparatus: "It is an object of this invention to provide a means which will permit the insertion of a casket into a hearse from the side thereof. * * * To accomplish this object, I provide a novel type of platform which is movable into a position in which it extends outwardly through a side opening in the hearse, so as to allow the placing of a casket thereon, and which may then be moved into a normal position permitting a closing of the side doors of the hearse. It is also an object of this invention to provide a platform which is freely movable. This is accomplished by the provision of separate means for supporting the platform and separate means for guiding the platform through a predetermined path." Hereafter, for brevity, Big Rock Ranch Company is referred to as Big Rock and the Eureka Company as Eureka.

By assignment from Heise in November, 1928, Big Rock became the owner of the application which resulted in the Heise patent together with two other applications. In December, 1928, Big Rock granted to defendant "the exclusive license throughout the world to make, use, and sell hearses and other vehicles embodying the inventions disclosed or claimed in said above identified applications for Letters Patent, as well as the inventions disclosed or claimed in any patent or patents resulting from said applications or disclosed or claimed in any patents later acquired by the licensor. * * *" In this license defendant agrees to mail to Big Rock on or before the 25th day of each month a statement "showing the total number of side loading hearses (or vehicles which embody the inventions disclosed in licensor's patents) shipped or delivered by licensee during the preceding calendar month. * * *" Defendant further agrees to pay royalties to Big Rock "on each and every side loading hearse (or set of vehicle parts embodying the inventions disclosed in patents of licensor) shipped or delivered by licensee," as therein provided.

In the following year defendant negotiated with Big Rock a nonexclusive license for Eureka under the Heise patent. Some trade competition on the part of Eureka was welcomed. To successfully exploit the Heise hearse this competition was deemed necessary. As a further consideration for a license Eureka was to assign to Big Rock its present and future applications and patents respecting side loading hearses. Accordingly, on September 12, 1929, un-

der a tripartite agreement or license Big Rock granted to Eureka "a nonexclusive license to make in its principal place of business wherever situated, and at no other place or places and to use and sell in the United States and throughout the world hearses and other vehicles embodying the inventions disclosed or claimed in said above identified applications for Letters Patent, as well as the inventions disclosed or claimed in any patent or patents resulting from any applications now owned or disclosed or claimed in any patents later acquired by the licensor. * * *" In turn Eureka agreed to mail to Big Rock on or before the 25th day of each month a statement showing the total number of side-loading hearses (or vehicles which embody the inventions in Big Rock's patents). Eureka further agreed to pay royalties to Big Rock "on each and every side loading hearse (or set of vehicle parts embodying the inventions disclosed in patents of licensor) shipped or delivered by licensee," as therein provided. It was also agreed that "any shipment of parts to be used in the building of a new side loading hearse" shall be considered as if Eureka had shipped a complete side-loading hearse and full royalty shall be paid thereon. Eureka further agreed to promptly assign to Big Rock its two applications then pending in the Patent Office and all other patent applications owned or later acquired relating to side-loading hearses. This license was subject to forfeiture "should either party hereto be in default as to any obligations hereunder and (within thirty days of receipt of written notice of said default from the other party) fail to remedy said defaults." Big Rock and Eureka formally executed this nonexclusive license to Eureka. Defendant joined therein in the following language: "Henney Motor Company, a Delaware Corporation, having its principal place of business in Wilmington, Delaware, hereby consents to and joins in the granting of the above license."

Under its license Eureka manufactured and sold complete hearses. Also Eureka manufactured and sold to hearse manufacturers sets of vehicle parts covered by the Heise patent as separate tables for hearses. Eureka sold such parts or tables to the Sayers & Scoville Company, the Meteor Motor Car Company, plaintiffs, and to the Flexible Company, the Superior Body Company and Knightstown Body Company. Defendant claims two things resulted from such sales: (1) Eureka violated the terms of the license; and (2) that license, after due notice, was forfeited. By letter of September 27, 1930, defendant and Big Rock advised Eureka of its default in selling separate Heise tables and afterwards by letter of October 29, 1930, notified Eureka its license was forfeited.

Can Eureka sell Heise parts or tables to hearse manufacturers separate and apart from finished hearses? The real controversy between the parties hinges upon the answer to that question. If Eureka can sell such separate parts, then its nonexclusive license was not forfeited and the alleged acts of unfair competition on the part of defendant are not justified. On the other hand, if Eureka cannot sell such separate parts its nonexclusive license was forfeited and the advertisements and statements of defendant may be justified. Such a controversy involves a reformation of Eureka's license. That relief can be properly obtained upon bill for reformation of Eureka's license. Such a bill for reformation of Eureka's license was brought and is still pending in the United States District Court for the Northern District of Illinois, Western Division. In that suit defendant is not a party, and, so far as appears, has not sought to make itself a party.

The court, in passing upon defendant's alleged acts of unfair competition, must ascertain and determine the meaning of Eureka's license. However, that meaning cannot be determined in this suit. Relief must be denied until Eureka's license is reformed and its meaning judicially determined.

This opinion contains a statement of the essential facts and the law applicable thereto in conformity with Equity Rule 70½, 28 U.S.C.A. following section 723.

The bill must be dismissed.